I'm here to please the court, Katherine Harker, Kandall Leitch, and I'm one of these attorneys who, no matter how many times I come here, I'm always confused by them. Well, maybe I get too swayed with my own rhetoric. Your Honors, this case concerns the adequacy of a change of plea and whether the violation of Rule 11 amounts to a deprivation of substantial rights. I would ask the court to parse, analyze, deconstruct, and look very closely at the change of plea language, because my argument rests upon the basic confusion, almost murky impenetrability of comprehending what was intended in the change of plea. Now, the change of plea that my client entered in his sentence, he entered a change of plea after a trial had started, and he entered a change of plea with the judge asking the United States Attorney to articulate the maximum possible consequences. Now, the court will know that this was a change of plea without a plea agreement. There was not a written plea agreement in place at this time for this particular change of plea. So it was done basically on the second day of trial. The client decided to change his plea. The court asked Mr. Enos to articulate the maximum possible sentence. And Mr. Enos, and this is in excerpt 5, page 27, says maximum potential sentence, Your Honor, would be 20 years, $250,000 fine up to a lifetime term simplifies your lease, and a $100 special assessment. The court then takes over and says to Mr. Leach, the maximum potential sentence is, as indicated by the government, no mention of the mandatory five-year minimum. The next statement of the court is, there also may be registration requirements. Any registration requirements, if applicable. Then the court immediately says, but otherwise then, if you're placed on supervised release, Now, if you're placed on supervised release, the if is conditional. And those of us who work in the court system, we understand all these terms of court, all these technical terms, we understand that supervised release is what occurs after an inmate has done his sentence. After he's released, he will be placed on supervised release under the administration of the United States Probation Department. That is not explained here to Mr. Leach, but it's said right after the maximum sentence of 20 years. The next statement is deconditional if you're placed on supervised release. Now, First of all, that was a fairly fundamental question. Why does he think your client belongs at the hearing today? Well, he wants to withdraw his plea. And he wants to go to trial. He wants to go to trial. He's understanding that he's going to get a five-year minimum, not a seven-year sentence. He's going to get five years minimum. The judge told him previously that it was very likely that he would get more than five years. And that he may, this is a looming category of, you know, be careful what you wish for. He thinks it's greater than seven years. That's exactly correct. And he's very unsuccessful on the jury waiver issue. He's back on the next trial. Is that correct? That's correct. That's correct. Yes, he understands that. And he's confessed. He's admitted to the police. What he did, there's no question that was dealt. This is just not a question. Well, he has made admissions, which he contests. He claims that the admissions were involuntary and that they were made after pressure. Now, of course, I know the judge issued a rule against him on that point. But the fact that perhaps it doesn't make logical sense that somebody who received a substantial variance and received a departure from the recommended guidelines and got down to 78 months, perhaps it doesn't make logical sense as to why he would want to start with Raw Ugly and start over. But that is his position. And obviously, I've checked with him and conferred with him, and that is his adamant position. So I think that my argument has to go with an emphasis on what he wants to do, not what you or I think might be the most logical result in this case. Before I was on this court, I was a district court, and I used to be very careful about this. There's no question a mistake was made. It would have been far better if you put the minimum in. But your opposition's been quite the same. Yeah, but there's no proof that substantial rights have been violated. There's no indication for all of us that the minimum had been stated, that anything different would have occurred. What is your response to that argument? Well, my opposing counsel points out that in the previous proceedings, that my client had been informed of the mandatory minimum. My argument to that is that we have to look at the context. In the previous proceeding, which was in September of 2013, approximately six weeks before the change of plea, Judge Ishii did instruct my client that there was a plea offer and that if he didn't accept the plea offer, which was for possession, that did not carry a mandatory five-year minimum, that if he did not accept the plea offer, that he would be subject to the five-year mandatory minimum. But within the context of that, I'm asking the Court to consider, that context was with regard to plea agreements, with acceptance and rejection of plea agreements. And Judge Ishii specifically says in that colloquy at that time, six weeks before the change of plea, if you're convicted, you could face the mandatory five years. Well, the term convicted is another term of art that may be subject to some confusion. We know, and the dictionary points out, that the term convicted means either jury or judge, but our question could be confused. I understand that. That's going to whether or not Ishii should have received the five, should have received the information on the mandatory minimum. But the other side said, he can give me the point that there's no substantial rights that were affected. That's the position of the government. These other issues continue to show us why it should have been done. And I agree with you, it should have been done. But unless you could show that substantial rights were affected, they'll say no harm, no foul. Well, the substantial right here is the right to have a guilty plea knowing, voluntary, and intelligent. And if it's not knowing, voluntary, and intelligent, and if there's a reasonable probability that there would have been a different result, had the mandatory minimum been properly explained, then he has a right to withdraw the plea subject to this court finding if there's any impairment in the fairness and integrity of justice. So I see it that there's two prongs. Are you saying, and I guess you have to take the position, because the judge said there's a mandatory minimum, he would not have pled at that time. That's what I'm saying. And the basis of that is what? The basis of that is that here in the change of plea, there is a muddling of language. The defendant is told that if you're placed on supervised release, that was my point about that, that if you're placed on supervised release, he could easily have conveyed to the defendant that if you're placed on supervised release, in this case with no mention of the mandatory minimum, he could easily have thought that he could be placed on supervised release because the court didn't say, when you're placed on supervised release, after you do your mandatory five-year minimum, then you're placed on supervised release. So doesn't his language suggest that he understood, because when they're talking about the recent report, he says, you know, I read that, or he didn't say I read it, and I said I don't have any problem with it. But then he asks if there's any way he would have been possible to go on probation. Well, that suggests to me that he's saying, I hear what you said in there, but then I'm just asking you, please, please do something else. And that suggests to me that he understood, but that he was hoping for something different than what it said. Well, certainly that's subject to that interpretation. But on the other hand, it's very common for a defendant to acknowledge understanding something when a defendant doesn't. For example, in this same change of plea colloquy, there's a discussion about what would be the mandatory term for a violation if the defendant violates supervised release, and there's a discussion there. It's ongoing. I know the whole issue is did he understand the five-year. You're down to about 20 seconds, so you may want to reserve the remaining time. Oh, sure. Okay. Counsel, I'd like you to address just briefly, because you're on your time. I'd like to address the jury question. Oh, go ahead. The jury question. Okay. The issue there is that under Rule 23, there was no written waiver of a jury trial. The waiver of the jury trial came very suddenly after the plea rejection. And your point is that you think that because he was not advised that he was entitled to be handed down as a jury, that he didn't know any ways to strike to a jury trial? Yes. I'm arguing on that basis. Basically, I think the strongest case in that area is the U.S. v. Sorority, where there was no Rule 23 written waiver, and the defendant was not told about the unanimous jury. The only difference between that case and my case is that in the Shorty case, it was found that Shorty had a low IQ and he had some learning disabilities. I can't claim that my client had learning disabilities, but the fact that there was no Rule 23 written waiver and the fact that he was not told about the unanimous jury, just being a college graduate, was not necessarily a priority. The fact that, instead, of course, you had to have a unanimous jury since some states don't have them. Thank you. Good morning, Your Honors. Brian Ados, United States. At the outset, I'd like to emphasize that with respect to everything Mr. Leach claimed, he didn't know. Somebody had already told him many important points. With respect to the third of the jury, the jury's representative didn't know he was entitled to a unanimous jury. Two times, the written plea agreements that his defense counsel had told to initiate a trial confirmation hearing. What did his counsel tell the jury? His counsel told the judge, in the context of requesting a court trial, that he had gone over the first plea offer, which was offering a receipt, roughly eight, nine months before trial, went through that with his client, and then he went over the second offer. He didn't have those plea agreements to mention the unanimous jury. They do. They mentioned everything that Judge Ishii had mentioned in the change of plea hearing itself, in addition to the written waiver. Frankly, it was on the rules of the law. I know that's what the rules require, right? It's just as straightforward. It just says, enter a written waiver. As far as when he requested a court trial, I should have had the trial confirmation hearing not knowing the defendant was requesting a court trial. Why did somebody stop? He could write it out on a piece of paper in front of everybody. Why didn't this rule rule? I didn't think about it. The day that we're in court trial, or the day we're through the trial confirmation hearing and getting ready for trial, the defense counsel stood up and said, we'd like a court trial. So what court Judge Ishii did was go over everything but the unanimous jury. So there's a mistake. And the question is, is it plain here? We get married, I don't think there's a mistake. No, I think there's a mistake. The issue is whether he's nevertheless loyally and intelligently waived his right to a jury trial. And here we have Mr. Leach confirming that he had been presented with two written plea agreements in the record. These clear, Judge Ishii mentions that they were the written agreements, and that he had reviewed them with his attorney and rejected them. So we've got every basis covered with respect to whether or not the trial jury waiver was, indeed, knowing and intelligent. On top of that, I think, Judge McHugh, you get the issues I was going to bring up with respect to non-justice indicators of substantial pride affected, but also whether or not it seriously affects the fairness of the trial with respect to what Mr. Leach did and what his mandatory minimums were. And it's important to note that after the change of plea, Mr. Leach, indeed, said that he volunteered, and what Judge Ishii did was ask him, okay, have you reviewed the PSR with your attorney? And he said yes. And then he volunteered by having no problems with the PSR. So not only do we have an issue where there are substantial rights affected because he knew what his minimums were and had been presented with those minimums on multiple occasions. The maximums, I think, are clear. Even at the change of plea, we know the maximums are no interest to the defendant, so let's respect to the minimums. Not only before he did this, he presented with those, but afterward he also, after reviewing the PSR and the minimums and maximums were in that document, I believe twice each, he volunteered. He had no problems with them. So even he had no problems with what the minimums and maximums were. Would you address the cumulative error argument? Because it does seem that, as Judge Wallace said, we don't have any compliance with Rule 11 in terms of the advice that the woman, nor do we have the anonymity issue on the table, either in writing or orally. And so counsel has made a cumulative error argument that is somewhat unusual because these are two distinct and disparate aspects, but it's one that I think we need to address. Sure. And I'd like to focus on the fact how they are distinct. When the court trial was requested and ultimately granted, that was September 3rd, 2013. That was roughly six weeks before trial. That's how confirmation is sent. When Mr. Leach pleaded guilty, that was the second day of the court trial after he moved through, frankly, the mid-trial supposition hearing. He lost. That was on October 23rd, 2013. So I think they need to, and they are properly addressed separately. One, let's look at his case plea, and granted the minimum potential sentence of incarceration in terms of crime release were not addressed on October 23rd. But what we can do is look at the record with respect to whether or not he, nevertheless, were aware of those minimums. And he was. And the agreement for prior plea offers discussed in detail in the prior non-trial confirmation with respect to the jury trial waiver. That's a separate and distinct and, frankly, discrete incident, which was six, seven weeks prior, at least 50 days prior, where, yes, there was a de-unanimity sub-issue addressed. But nevertheless, Rule 11b-1c says, looking at your advising of the right to a jury trial is not absolutely required that you go through de-unanimity. I understand it is strongly encouraged. But I wouldn't be here on this issue if it had just been raised, if I remember to reason myself. But nevertheless, then what we need to do is look separately, with respect to his waiving his right to a jury trial, and determine whether or not it's knowing and intelligent. And here it is because he had been provided on two prior occasions, which he acknowledged on the record all of his jury trial rights, including the unanimity requirement on those two occasions. I welcome any further questions. I don't think we have any further questions. Thank you. Thank you. Well, we used up your time, and you used up your time. I would like to give you a minute for rebuttal. Oh, thank you very much. Mr. Enos has referred to the prior, the agreements that were furnished to Mr. Leach and Mr. Leach's counsel as authority for the fact that he would have been aware of the unanimous jury and the mandatory minimum. There is a case that is cited in Mr. Enos' brief, and that is U.S. v. Spania, 314 F. 3rd, 1152, 9th Circuit, 2003. That case involved a written plea agreement, but the court and the colloquy did not sufficiently explain what the nature of the charges were. That case talks about how you cannot simply assume that because there was a prior plea agreement that a defendant is aware of all the language in a prior plea agreement, particularly would that be here, where the prior plea agreements were not signed at all. So I would argue, based on the Pena case, that reliance on plea agreements that were never accepted at all would be incorrect and would violate the Pena case, which is that you can't assume that a defendant reads all the boilerplate language that would be subsumed in to the agreements. Thank you. Thank you. I'd like to thank both of you for your arguments. Marnie, the case of United States v. Speeches is submitted. Our next case for argument will be Cook v. Cage.
judges: Wallace, McKeown, Bybee